# EXHIBIT C

FILED
3/4/2021 1:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00996

12441747

| | | |
|---|---|---|
| **2120 - Served** | **2121 - Served** | **2620 - Sec. of State** |
| **2220 - Not Served** | **2221 - Not Served** | **2621 - Alias Sec of State** |
| **2320 - Served By Mail** | **2321 - Served By Mail** | |
| **2420 - Served By Publication** | **2421 - Served By Publication** | |
| **Summons - Alias Summons** | | **(12/01/20) CCG 0001 A** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Richard Ramos and Pavel Balaz

Plaintiff(s)

v.

Case No.    2021CH00996

ZK Technology, LLC. and ZKTeco USA, LLC.

Defendant(s)

**ZK Technology, LLC.:**
Jaimin Shah *or* any officer, management agent, general agent, or any
other agent authorized to receive service of process at
200 Centennial Ave., #211 Piscataway, New Jersey 08854

Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail   **X** Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE**. You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Page 1 of 3

**Summons - Alias Summons** (12/01/20) CCG 0001 B

FILED DATE: 3/4/2021 1:21 PM 2021CH00996

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

**X** Atty. No.: 43734
○ Pro Se 99500

Name: Megan E. Shannon
Atty. for (if applicable):

Richard Ramos

Address: 100 N. Riverside Plaza, Suite 2150

City: Chicago

State: IL. Zip: 60606

Telephone: 312-233-1550

Primary Email: mshannon@stephanzouras.com

3/4/2021 1:21 PM IRIS Y. MARTINEZ

Witness date _____

_____
IRIS Y. MARTINEZ, Clerk of Court

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

FILED DATE: 3/4/2021 1:21 PM  2021CH00996

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:**  DRCourtDate@cookcountycourt.com
                    OR
        ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

Return Date: No return date scheduled
Hearing Date: 6/30/2021 10:00 AM - 10:00 AM
Courtroom Number: 2510
Location: District 1 Court
  Cook County, IL

FILED
3/2/2021 3:10 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00996

12409026

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **RICHARD RAMOS, and** ) | |
| **PAVEL BALAZ, individually and on** ) | |
| **behalf of all others similarly situated,** ) | **Case No.   2021CH00996** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ZK TECHNOLOGY LLC and ZKTECO USA** ) | |
| **LLC,** ) | |
| ) | |
| **Defendants.** | |

## CLASS ACTION COMPLAINT

Plaintiffs Richard Ramos ("Ramos") and Pavel Balaz ("Balaz") (collectively, "Plaintiffs") individually and on behalf of all others similarly situated (the "Class"), by and through their attorneys, bring the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against ZK Technology LLC and ZKTeco USA LLC (collectively, "ZKTeco" or "Defendants"), their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, obtainment, use, storage, and disclosure of Plaintiffs' sensitive and proprietary biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves, their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.      ZKTeco is a leading developer and manufacturer of biometric verification and timekeeping systems with its three main focuses being Biometric Verification Core Technique Empowerment, Smart Entrance & Exit "Person + Car + Object" Software Platform Empowerment,

1

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

and ZKTeco+ Smart Office Cloud Platform Empowerment. ZKTeco provides biometric products to global public services users, enterprise-level users and personal users. ZKTeco's biometric timekeeping products and services are widely used in various fields including smart offices, education, and manufacturing.

2.      Chief among ZKTeco's offerings is its ZKTeco+ Cloud Platform, which utilizes cloud-based technology to connect ZKTeco's devices, such as biometric timekeeping terminals, access control, visitor management, Point Of Sale ("POS") systems, and other "smart terminal devices" through software platforms including ZKBioTime and ZKBio Cloud.[1]

3.      For purposes of employee timekeeping, many of ZKTeco's clients use ZKTeco software and cloud-based services in conjunction with biometric timekeeping devices featuring fingerprint readers. Defendants also manufacture and sell their own biometric time clocks with fingerprint scanners, like the ZW100 and ZK-200 series, which can be coupled with ZKTeco timekeeping software, or third party payroll and Human Capital Management software.

4.      For example, ZKTeco offers Data Collection Software ("DCS") for Workday Time Tracking, a third-party global time-and-attendance application.[2]

5.      ZKTeco's DCS product collects biometric data at ZKTeco terminals, automatically uploads to the DCS, and then "automates the collection and uploading of employee data to Workday." *See* Cost Effective Time Clock Solution for Workday, attached hereto as Exhibit A.

6.      ZKTeco's Biometric time keeping devices, like the ZW100 and ZK-200, authenticate users' identities by capturing and utilizing their biometric identifiers and/or information (hereafter referred to as "biometric data"). In fact, one of the selling points that

---

[1] *See* Main Business, available at https://www.zkteco.com/en/company_profile.html.

[2]    *See* Workday Time Tracking, available at https://www.workday.com/content/dam/web/en-us/documents/datasheets/datasheet-workday-time-tracking.pdf.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

ZKTeco identifies in its marketing literature for the ZK-200 is the storage for "8,000 unique fingerprint user capacity". [3] In practice, biometric time clocks require users to scan their biometric data before they can clock in and out of work.

7.      In this case, the ZKTeco devices used by Plaintiffs' employers required Plaintiffs and all other users to scan and register either their index finger or thumbprint with the device in order to clock in and out work.

8.      Typically, biometric timekeeping devices function by capturing an image of a user's fingerprint when the individual enrolls on a device. From the image, unique features are extracted to create a unique template associated with the user, which is stored directly on the device, as well as in a database. Each time the user subsequently provides their fingerprint, the device compares the unique features of the input fingerprint against the stored templates of each set of fingerprints enrolled with the device to verify the user's identity.

9.      The fingerprint data collected and obtained from ZKTeco's and other biometric timekeeping manufacturers' hardware devices and inputted into ZKTeco's cloud-based storage and software, is managed, maintained, and stored on ZKTeco's hosted environments and servers.

10.      While there are benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with each individual. This exposes individuals like Plaintiffs, who are required to use ZKTeco devices, to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Clearview AI, Facebook/Cambridge Analytica, and Suprema data breaches – individuals have **_no_**

---

[3] *See* ZW200 Series, available at https://www.zktechnology.com/products/zw200-series/.

3

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

11.     Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as medical providers – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

12.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

13.     An illegal market exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data—including fingerprints, iris scans, and facial photographs—of over a billion Indian citizens.[4] In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes.[5]

14.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect, obtain, store and use Illinois citizens' biometrics, such as fingerprints.

---

[4] *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at*:
https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

[5] Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

FILED DATE: 3/2/2021 3:10 PM    2021CH00996

15.     Notwithstanding the clear and unequivocal requirements of the law, ZKTeco disregards Illinois users' statutorily protected privacy rights and unlawfully collects, obtains, stores, disseminates, and uses their biometric data in violation of BIPA. Specifically, ZKTeco has violated and continues to violate BIPA because it did not and continues not to:

   a. Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, obtained, stored, and used, as required by BIPA;

   b. Receive a written release from Plaintiffs and others similarly situated to collect, obtain, store, or otherwise use their fingerprints, as required by BIPA;

   c. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' fingerprints, as required by BIPA; and

   d. Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

16.     ZKTeco improperly discloses its timekeeping device users' biometric data to other, currently unknown, third parties, including but not limited to ZKTeco's clients and/or other third parties that host biometric data in their data center(s), and third party payroll service providers such as Workday.

17.     ZKTeco lacks retention schedules and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric data and has not and will not destroy their biometric data, as required by BIPA.

18.     ZKTeco timekeeping device users have a proprietary right to control their biometric identifiers and information. In failing to comply with the requirements of BIPA, ZKTeco intentionally interferes with each user's right of possession and control over their valuable, unique, and permanent biometric data.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

19.     ZKTeco is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

20.     These violations have raised a material risk that Plaintiffs' and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

21.     Accordingly, Plaintiffs seek an Order: (1) declaring that ZKTeco's conduct violates BIPA; (2) requiring ZKTeco to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiffs and the proposed Class.

## PARTIES

22.     Plaintiff Richard Ramos is a natural person and a resident of the State of Illinois.

23.     Plaintiff Pavel Balaz is a natural person and a resident of the State of Illinois.

24.     Defendant ZKTeco USA LLC is a Georgia limited liability company that conducts business in Illinois.

25.     Defendant ZKTechnology LLC is a New Jersey limited liability company that conducts business in Illinois.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over Defendants pursuant to 735 ILCS § 5/2-209 because Defendants conduct business transactions in Illinois and committed the statutory violations alleged herein in Illinois.

27.     Venue is proper in Cook County because Defendants conduct business in this State and in Cook County.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

## FACTUAL BACKGROUND

I.   **The Biometric Information Privacy Act**

28.    In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

29.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

30.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

31.    Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

7

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

32.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a. Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

    b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, obtained, stored, and used; and

    c. Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

33.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

34.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

35.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

36.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

37.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, obtain, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

38.     Plaintiffs, like the Illinois legislature, recognize how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendants Violate the Biometric Information Privacy Act.

39.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using individuals' biometric data stopped doing so.

40.     However, Defendants failed to take note of the shift in Illinois law governing the collection, obtainment, storage, use and dissemination of biometric data. As a result, Defendants continue to collect, obtain, store, use and disseminate Illinois citizens' biometric data in violation of BIPA.

41.     Specifically, when individuals first use one of Defendants' biometric timekeeping devices, they are required to have their fingerprint scanned in order to enroll them in ZKTeco's database(s).

42.     ZKTeco's biometric timekeeping, devices, like other biometric technology, authenticate user identities by capturing and utilizing their biometric identifiers and/or information. The technology allows software applications to communicate with a broad range of biometric technology similarly.

43.     ZKTeco designs and constructs its biometric timeclocks with a network interface, which provides transmission of fingerprint data collected and/or obtained from those devices to its servers and to third-parties who host that data.

44.     ZKTeco developed and markets an integrated time management system, through which ZKTeco actively manages, maintains, and stores data collected from ZKTeco devices, including biometric data, in a single, centralized location on its hosted environments and servers.

45.     ZKTeco accesses its biometric timekeeping servers for various purposes, including to facilitate support services for its clients, to enforce state-mandated or corporate HR rules, and to quickly push out reminders with ZKTeco's timeclocks.

46.     Unfortunately, ZKTeco fails to inform its biometric timekeeping device users: that ZKTeco is collecting, obtaining, storing or using their sensitive biometric data; the extent of the purposes for which it does so; or to whom the data is disclosed.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

47.     Defendants fail to maintain a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying individuals' biometric identifiers and information when the initial purpose for collecting, capturing or obtaining their biometric data is no longer relevant, as required by BIPA.

48.     In addition, ZKTeco profits from the use of individuals' biometric data. For instance, ZKTeco markets its biometric timekeeping devices and DCS services to employers as a superior option to traditional time clocks because it leverages employee biometric fingerprint scans captured during punching for accurate time collection to help deter costly "buddy punching" – where one employee punches in to or out of a time clock for another (absent) employee.

49.     Even more, ZKTeco markets itself as an efficient tool for cutting HR and IT costs because ZKTeco provides automates data collection and total integration between timekeeping terminals, cloud-based storage, and payroll service providers.

50.     By marketing its biometric timekeeping devices in this manner, ZKTeco obtains a competitive advantage over other time clock and biometric verification companies and secures profits from its use of biometric data, all while failing to comply with the minimum requirements for handling users' biometric data established by BIPA.

51.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing a fingerprint but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a fingerprint, who exactly is collecting or obtaining their biometric data, where it will be transmitted and for what purposes, and for how long. Defendants disregard these obligations and users' statutory rights and instead unlawfully collect, obtain, store, use and

11

FILED DATE: 3/2/2021 3:10 PM    2021CH00996

disseminate their biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

52.     Remarkably, Defendants have created the same situation that Pay by Touch did by assembling a database of biometric data through broadly deployed fingerprint scanners, but failed to comply with the law specifically designed to protect individuals whose biometrics are collected in these circumstances. Defendants disregard these obligations and Illinois users' statutory rights and instead unlawfully collect, capture, obtain, store, use, and disseminate individuals' biometric identifiers and information without ever receiving the individual's informed written consent as required by BIPA.

53.     Individuals who use ZKTeco biometric timekeeping devices (or who have their biometric data maintained or stored by Defendants) are not told what might happen to their biometric data if and when Defendants merge with another company or worse, if and when Defendants' business folds, or when the other third parties that have received their biometric data businesses fold.

54.     Since Defendants neither publish a BIPA-mandated data-retention policy nor disclose the purposes for its collection, obtainment and use of biometric data, Individuals who use ZKTeco biometric timekeeping devices have no idea whether Defendants sell, disclose, re-disclose, or otherwise disseminate their biometric data. Moreover, Plaintiffs and others similarly situated are not told whom Defendants currently disclose their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

55.     These violations have raised a material risk that Plaintiffs and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

12

FILED DATE: 3/2/2021 3:10 PM    2021CH00996

56.     By and through the actions detailed above, Defendants disregard Plaintiffs' and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Plaintiffs' Experiences**

57.     Plaintiff Richard Ramos has worked for an employer in Illinois since April of 2015.

58.     Plaintiff Pavel Balaz worked for an employer in Illinois from March 2019 through November 2019.

59.     ZKTeco provides Plaintiffs' current and former employers with biometric time and attendance services and products. As part of its services, ZKTeco hosted, collected and managed the biometric data of Plaintiffs and others working in Illinois.

60.     Specifically, Plaintiffs were required to scan and enroll their fingerprints with their employers' ZKTeco devices as a condition of their employment, for the purpose of tracking their time and meal breaks.

61.     Plaintiffs were required to scan their fingerprints on the ZKTeco device onsite each time they: (1) began and ended their workday and (2) clocked in and out for breaks.

62.     ZKTeco subsequently stored Plaintiffs' biometric data in its cloud-based databases, hosted environments and servers.

63.     Plaintiffs have never been informed of the specific limited purposes or length of time for which Defendants collected, obtained, stored, used and/or disseminated their biometric data.

64.     Plaintiffs have never been informed of any written, publicly available biometric data retention policy developed by Defendants, nor have they ever been informed of whether Defendants will ever permanently delete their biometric data.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

65.     Plaintiffs have never been provided with, nor ever signed, a written release allowing Defendants to collect, capture, obtain, store, use and/or disseminate their biometric data.

66.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

67.     No amount of time or money can compensate Plaintiffs if their biometric data is compromised by the lax procedures through which Defendants collected, captured, obtained, stored, and/or used Plaintiffs' and other similarly-situated individuals' biometrics. Moreover, Plaintiffs would not have provided their biometric data to Defendants if they had known that Defendants would retain such information for an indefinite period of time without their consent.

68.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

69.     Nonetheless, Plaintiffs have been aggrieved because they suffered an injury-in-fact based on Defendants' violations of their legal rights. Defendants intentionally interfered with Plaintiffs' right to possess and control their own sensitive biometric data. Additionally, Plaintiffs suffered an invasion of a legally protected interest when Defendants secured their personal and private biometric data at a time when it had no right to do so, a gross invasion of their right to privacy. BIPA protects individuals like Plaintiffs from this precise conduct. Defendants had no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

14

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

70.     As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation for the injuries caused by Defendants. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

71.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiffs bring claims on their own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

72.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected, obtained or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, obtained, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

73.     Plaintiffs seek class certification under the Illinois Code of Civil Procedure, 735 § ILCS 5/2-801 for the following class of similarly-situated individuals under BIPA:

> All users in the State of Illinois who had their biometric information and/or biometric identifiers collected, captured, received, or otherwise obtained or disclosed by any Defendant during the applicable statutory period.

74.     This action is properly maintained as a class action under 735 ILCS § 5/2-801 because:

A.      The class is so numerous that joinder of all members is impracticable;

B.      There are questions of law or fact that are common to the class;

C.      The claims of the Plaintiffs are typical of the claims of the class; and,

15

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

D.     The Plaintiffs will fairly and adequately protect the interests of the class.

**Numerosity**

75.     The total number of putative class members exceeds one hundred (100) individuals.

The exact number of class members can easily be determined from Defendants' records.

**Commonality**

76.     There is a well-defined commonality of interest in the substantial questions of law

and fact concerning and affecting the Class in that Plaintiffs and all members of the Class have

been harmed by Defendants' failure to comply with BIPA. The common questions of law and fact

include, but are not limited to the following:

A.     Whether Defendants collected, captured or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

B.     Whether Defendants properly informed Plaintiffs and the Class of their purposes for collecting, obtaining, using, storing and disseminating their biometric identifiers or biometric information;

C.     Whether Defendants obtained a written release (as defined in 740 ILCS § 14/10) to collect, obtain, use, store and disseminate Plaintiffs' and the Class's biometric identifiers or biometric information;

D.     Whether Defendants have disclosed or re-disclosed Plaintiffs' and the Class's biometric identifiers or biometric information;

E.     Whether Defendants have sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometric identifiers or biometric information;

F.     Whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

G.     Whether Defendants comply with any such written policy (if one exists);

H.     Whether Defendants used Plaintiffs' and the Class's fingerprints to identify

16

FILED DATE: 3/2/2021 3:10 PM    2021CH00996

them;

I.     Whether Defendants' violations of BIPA have raised a material risk that Plaintiffs' biometric data will be unlawfully accessed by third parties;

J.     Whether the violations of BIPA were committed negligently; and

K.     Whether the violations of BIPA were committed intentionally and/or recklessly.

77.    Plaintiffs anticipate that Defendants will raise defenses that are common to the class.

## Adequacy

78.    Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members. Plaintiffs, moreover, have retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

79.    The claims asserted by Plaintiffs are typical of the class members they seek to represent. Plaintiffs have the same interests and suffers from the same unlawful practices as the class members.

80.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS § 5/2-801.

## Predominance and Superiority

81.    The common questions identified above predominate over any individual issues,

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

82.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

83.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

84.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the

18

FILED DATE: 3/2/2021 3:10 PM    2021CH00996

company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

85.     Defendants fail to comply with these BIPA mandates.

86.     Defendants are limited liability companies conducting business in Illinois and thus qualify as "private entities" under BIPA. *See* 740 ILCS § 14/10.

87.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and/or obtained by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

88.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

89.     Defendants failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

90.     Defendants lack retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and has not and will not destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

91.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendants to comply with BIPA's requirements for the collection, obtainment, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA

19

FILED DATE: 3/2/2021 3:10 PM    2021CH00996

pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

92.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

93.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS § 14/15(b) (emphasis added).

94.     Defendants fail to comply with these BIPA mandates.

95.     Defendants are limited liability companies conducting business in Illinois and thus qualify as "private entities" under BIPA. *See* 740 ILCS § 14/10.

96.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and/or obtained by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

97.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

98.     Defendants systematically and automatically collected, obtained, used, stored and disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

99.     Defendants did not inform Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, obtained, stored, used and disseminated, nor did Defendants inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, obtained, stored, used and disseminated as required by 740 ILCS § 14/15(b)(1)-(2).

100.    By collecting, obtaining, storing, using and disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

101.    On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendants to comply with BIPA's requirements for the collection, obtainment, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

**THIRD CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and**
**Information Before Obtaining Consent**

102.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

103.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

104.     Defendants fail to comply with this BIPA mandate.

105.     Defendants are limited liability companies conducting business in Illinois and thus qualify as "private entities" under BIPA. *See* 740 ILCS § 14/10.

106.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and/or obtained by Defendants, as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

107.     Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

108.     Defendants systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

109.     By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

110.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by

22

FILED DATE: 3/2/2021 3:10 PM    2021CH00996

requiring Defendants to comply with BIPA's requirements for the collection, obtainment, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs Richard Ramos and Pavel Balaz respectfully request that this Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Richard Ramos and Pavel Balaz as Class Representatives, and appointing Stephan Zouras, LLP, as Class Counsel;

B.      Declaring that Defendants' actions, as set forth above, violate BIPA;

C.      Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.      Declaring that Defendants' actions, as set forth above, were intentional or reckless;

E.      Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendants to collect, obtain, store, use, destroy and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.      Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.      Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and,

H.      Awarding such other and further relief as equity and justice may require.

23

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

Date:   March 2, 2021

Respectfully Submitted,

*/s/ Ryan F. Stephan*

Ryan F. Stephan
James B. Zouras
Megan E. Shannon
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
mshannon@stephanzouras.com
Firm ID: 43734

David Fish
dfish@fishlawfirm.com
Mara Baltabols
Mara@fishlawfirm.com
docketing@fishlawfirm.com
**THE FISH LAW FIRM, P.C.**
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
admin@fishlawfirm.com
Cook #44086

**ATTORNEYS FOR PLAINTIFF**

24

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on March 2, 2021, I filed the attached with the Clerk of the Court using the Court's electronic filing system, which will send such filing to all attorneys of record.

/s/ Ryan F. Stephan

Return Date: No return date scheduled
Hearing Date: 6/30/2021 10:00 AM - 10:00 AM
Courtroom Number: 2510
Location: District 1 Court
      Cook County, IL

# EXHIBIT A

2021CH00996

FILED
3/2/2021 3:10 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH00996

12409026

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

FILED DATE: 3/2/2021 3:10 PM 2021CH00996



ZKTeco

## Cost Effective
time clock solution for **Workday**



FILED DATE: 3/2/2021 3:10 PM   2021CH00996

## Automatically Upload Employee Time Records to Workday's Time Tracking.

Why pay someone to manually input employee time records, or waste time on staff disputes over time worked or data entry errors? ZKTeco's (ZK) Data Collection Solution automates the collection and uploading of employee data from multiple workforce data collection terminals directly to Workday's Time Tracking. Never again will you need to manually input employee time records. ZK's seamless Workday integration makes it all automatic and hands-free!

### ZKTeco Data Collection Solution for Workday

ZK's Data Collection Solution includes ZK Biometric and/or RFID Terminals and Data Collection Software (DCS), which automates the collection and uploading of employee data to Workday – all in one simple solution.

ZK's Data Collection Software (DCS) makes integration and communication seamless between Workday and ZK's workforce management terminals. The ZK terminals allow users to punch in/out and review punches, as well as enter and review department and cost center information. ZK's DCS runs on multiple-type databases (i.e. MySQL, MS SQL, Oracle) and enables terminal management, system monitoring, fingerprint template management and sharing, data redundancy, backup and many other functions.

ZK's services for Workday customers include free pilot programs*, customization, implementation, training, extended warranties, flexible maintenance programs and more.



*Contact ZK for details.

FILED DATE: 3/2/2021 3:10 PM 2021CH00996

**Seamless Integration between Data Collection and Workday.**

ZKTeco (ZK) integrates seamlessly with Workday to automate previously manual data-entry operations, which greatly reduces administrative overhead. ZK also saves you time by supporting Group Mapping of both terminals and employees. This eliminates the burden of manually configuring individual terminals and assigning individual employees to those terminals, accordingly. Our user-friendly DCS Dashboard manages all of your ZK terminals and helps make setup and operation FAST and EASY.

# How it Works

**1**

Workday — Mike Smith

Create employee profiles in Workday Time Tracking Module.



**2**

Install ZK's workforce management terminals and Data Collection Software (DCS) throughout your enterprise. You may need one or more instances of DCS installed depending on your enterprise network configuration and locations.



**3**

Once the DCS is installed and communicating with Workday, your employee profiles automatically download to the DCS.



**4**

Enroll your employees by entering their card/badge numbers in the DCS software. Fingerprint-users can enroll directly on any fingerprint terminal or a central computer. You need only enroll each employee ONCE. DCS automatically copies your employees' enrollment data to all your other terminals.



**5**

Now employees are ready to use the terminal to Punch-IN /out and other features available at the terminal.



**6**

When your employees punch in/out on the ZK terminals, the employees' respective time records are automatically uploaded to the DCS. The DCS then subsequently uploads the time records and other data to Workday, accordingly. Note that all data uploads in near real time.



**7**

Once your employee time records are uploaded to Workday, you can use all the terrific functionality and reporting available in Workday. It's that easy!

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

# Terminals for Workday



ZW100



ZW200

## Easy to Use.
## Easy to Manage.
## Comprehensive Features.



Go to workdayclocks.com and click
on free trial icon

## ZK Clocks for Workday - Key features

- Personalized main screen with customer Logo Image, Date and Time.
- Check IN, Check OUT, Meal Function key – Force user to select to avoid mis-punch.
- Configurable function key and personalized key label.
- Work Code and Job Code listing and selection.
- Real-time Attendance data transfer to server
- Support offline attendance punch, storage and auto uploading on network recovery.
- Static and DHCP IP mode.
- IP or URL setting model.
- Time Zone and daylight savings.
- Multiple verification mode – proximity, biometric, keyboard, password and any combination

### Additional features

- Stores up to 8,000 fingerprint templates (expandable), 10,000 card (badge) holders and 200,000 transactions
- 3.5 inch color TFT screen display equipped with audio and visual indicators
- 16 + 8 additional dedicated function keys
- Highly accurate ZK optical fingerprint sensor with fast-matching algorithm
- Internal RFID/Prox card reader with options for HID and Mifare
- TCP/IP, RS232/485, both Wiegand In & Out ports and multiple relay contacts with the option to connect a third-party external bell/alarm
- Options for wireless 3G or WI-FI communications, external battery backup or external Power over Ethernet (PoE)
- If your needs exceed the above specifications, contact your ZK sales representative for other available options.

FILED DATE: 3/2/2021 3:10 PM   2021CH00596



**Centralized Terminal Management.**

**Secure Data uploads to Workday.**

ZKDCS

ZKTeco ZKDCS DATA COLLECTION SOFTWARE

## ZKTeco Data Collection Software (DCS) features:

**System:**

- Web-based application (Local or in Cloud)
- Supports multiple operating systems (Windows, Linux)

**Organization:**

- View organization hierarchy and employee list
- Quick employee search with multiple key words
- Employee group manual setup on custom definition
- Online work code or job code setup and download to clock

**Clock Management:**

- Easy, online clock registration and configuration
- Real-time Clock status, monitoring and logging
- Online Clock configuration listing
- Clock grouping
- Setup, maintain and Backup Clock configuration remotely
- Upgrade Clock firmware remotely
- Reboot Clock remotely

**Operations:**

- Rule based employee data auto sync process by location, organization and user groups.
- Auto remove inactive employees from clock.
- Auto distribution of fingerprint template to assigned clock on enrollment.
- Employee punch verifying mode online setup and auto distribution to assigned Clocks.
- Online search and review employee time attendance record collected from Clock.
- Export employee attendance record to text or Excel® file.

**Auto Job Scheduling:**

- Schedule jobs to load employee related information and data from Workday to ZK DCS
- Schedule jobs to submit attendance records from ZK DCS to Workday.

**Security:**

- Role based user login
- Supports SSL/HTTPS communication
- Clock to DCS communication auditing
- Workday to DCS communication auditing
- Clock operation auditing

FILED DATE: 3/2/2021 3:10 PM  2021CH00996

**Services for every need.**
**Fast turnaround on customizations.**

ZK offers a full range of services including customization, implementation, training, ongoing maintenance, advanced replacement warranty and leasing programs. Our team of highly experienced technical experts is standing by to take care of any of your service requirements.

## Implementation/Training:

Need help with an implementation? With offices worldwide, the ZK team can come to your offices to help with integration, testing and training.

## Customization:

ZK terminal models ZW100 and ZW200 work seamlessly together with Workday right out of the box. If you have special needs, trust ZKTeco to handle them. Customization services are available for hardware (ZK terminals), firmware and DCS (Data Collection Software).

## Maintenance:

Customers with valid maintenance contracts are eligible to receive free regular ZK software and hardware updates and upgrades directly from ZK.

## Standard & Extended Warranties:

We stand behind every one of our products. Each product is covered by a one-year Standard Hardware Warranty against manufacturing defects. Extended Hardware Warranties for up to seven years for manufacturing defects are also available.

## Advanced Replacement Warranty:

We guarantee the delivery of replacement terminals, even prior to ZK receiving the terminal you are returning.

## Leasing:

Not ready to buy or have short-or long-term needs? Check out our leasing plans.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996



**Global.**

**Trusted.**

**Flexible.**

**Engaged.**

Why do over 500 workforce management software companies worldwide put their businesses' reputations on the line each day by partnering with ZKTeco (ZK)? Trust and consistent reliability.

ZK is one of the largest global manufacturers and distributors of workforce management terminals and security solutions. We've sold over ten million units, which are supported by Many worldwide branch offices and thousands of partners worldwide.

We build all of our products in-house at our state-of-the-art 700,000 square foot manufacturing facilities. We control everything - from R&D, manufacturing, product design, terminal assembly and logistics/shipping - so we can ensure consistently fast turnaround times and availability.

Our huge economies of scale allow us to pass our significant savings on to our customers. We're flexible, reputable, easy to work with and we have offices all around the globe ready to serve you.

There's a reason why ZKTeco is one of the leading manufacturers and distributors of workforce management terminals and security solutions, serving customers in all over the world. Work with us and experience the ZK difference for yourself.

FILED DATE: 3/2/2021 3:10 PM   2021CH00996

Seamless Integration between Time Clocks and **Workday** is finally here. Call us today!

# Why ZK?

- Automate time record uploads to Workday
- Easy management of multiple terminals
- Reliable terminals for Workday
- Over 15 million terminals installed worldwide
- Over 1,800 employees strong
- Many worldwide branch offices



ZKTeco
201 Circle Drive North, Suite 116
Piscataway, NJ 08854

+1 732-412-6007 ext. 215
+1 732-412-6008
workday@zktechnology.com
workdayclocks.com

© Copyright 2015. ZKTeco. ZKTeco logo are registered trademark of ZK Technology LLC or a related company. All other product and company names mentioned are used for identification purposes only and may be the trademarks of their respective owners. All specifications are subject to change. All rights reserved.